1

2

3

4

5

6

The Honorable Richard A. Jones

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  SHARON ROZEBOOM and ANTHONY
   LAVALLEY, individually and on behalf of all
10 other similarly situated individuals,

11              Plaintiffs,

12       v.

13 DIETZ & WATSON, INC.,

14              Defendant.

Case No. 2:17-cv-01266-RAJ

**DEFENDANT DIETZ & WATSON,
INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
CONDITIONAL CLASS
CERTIFICATION AND COURT-
AUTHORIZED NOTICE**

**NOTED FOR HEARING:
DECEMBER 1, 2017**

15

16

17

18

19

20

21

22

23

24

25

26

**DEF'S OPP. TO CONDITIONAL CERTIFICATION**

2:17-CV-01266-RAJ

## I.    INTRODUCTION

Plaintiffs allege that Defendant Dietz & Watson, Inc. ("Dietz") misclassified them, and hundreds of other "Merchandisers" employed in different locations nationwide, as being exempt from overtime under the Fair Labor Standards Act ("FLSA"). Relying solely on generic, conclusory declarations from themselves and just three of the six opt-in plaintiffs, Plaintiffs now seek to dramatically alter the scope of this case. Specifically, Plaintiffs ask this Court to conditionally certify this case as a nationwide FLSA collective action, and to authorize notice to all Merchandisers throughout the country.

As discussed in detail below, Plaintiffs' Motion must be denied because Plaintiffs have failed to meet their burden of proving that conditional certification of a nationwide FLSA collective action is appropriate in this case. In particular, Plaintiffs' Motion is defective because the identical declarations submitted by Plaintiffs provide no details or explanation regarding the actual day-to-day job duties performed by Merchandisers, and are legally insufficient to establish that all Merchandisers are "similarly situated." Notably, the only other evidence submitted by Plaintiffs about their job duties – the job description – establishes that Merchandisers are not similarly situated because: "Each customer's needs vary and it is the merchandiser's responsibility to assess these unique needs and design programs and products in different combinations to meet those specific needs." *See* Dkt. No. 20-5, pg. 3. Moreover, contrary to their generic declarations, written statements by Plaintiffs and the Opt-In Plaintiffs during their employment confirm that their jobs are complex and diverse, and involve countless individual factors that make conditional certification improper. Finally, Plaintiffs have failed to identify any "single decision, policy, or plan" that will determine the outcome of their claims in this action. Given these fundamental defects, and the fact that this case will devolve into hundreds of individualized inquiries if the Court certifies Plaintiffs' proposed collective action, the Court should deny Plaintiffs' Motion.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

## II.    STATEMENT OF FACTS

### A.    Dietz's Decentralized Sales Organization Varies From Region to Region.

Dietz, a family-owned business based in Philadelphia, is one of the largest preparers of premium deli meats and artisan cheeses in the world. *See* accompanying Declaration of Rich Wright ("Wright Decl."), ¶ 2. Dietz offers over 400 products at supermarkets and delis throughout the United States and internationally. *Id.*, ¶ 3. Operating throughout the country, Dietz decentralized its sales functions approximately eight years ago and created five regions. *Id.*, ¶ 3. This structure depends on regional management teams, which exercise significant discretion in managing their workforce and developing different sales policies that depend upon region-specific factors, all of which directly impacts the workload, job duties, and individual experiences of their salesforce, including the Merchandisers. *Id.*, ¶ 3.

### B.    The Job Duties Performed by Merchandisers Vary Widely Depending on Their Particular Accounts and Individual Stores.

Dietz has "banner accounts" throughout the U.S., which are held with large, multi-site supermarkets. Wright Decl., ¶ 4. Dietz employs Merchandisers to service its banner accounts and promote sales at 3,000 individual store locations. *Id.*, ¶ 4.  During the time period at issue in this lawsuit, Dietz has employed approximately 300 Merchandisers across the country, who are supervised by Merchandising Managers. *Id.*, ¶ 4.  Because Merchandisers devote their time to visiting store locations where Dietz's products are sold, the vast majority of their work is performed on site. *Id.*, ¶ 4. At each store location, Merchandisers regularly interact with individual customers, deli managers and associates, and store managers. *Id.*, ¶ 4.

Many aspects of the Merchandisers' work is "account driven" and not determined by any particular Dietz-mandated procedures. *Id.*, ¶ 5.  The work performed by a Merchandiser will vary greatly depending upon the goals for their particular stores at that particular time. *Id.*, ¶ 5.   For example, the goal may be to bring in new products, increase sales of a certain product or increase sales overall, maintain sales, broaden the inventory of products they carry, improve the

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 2

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

appearance of the deli and displays, and/or establish or strengthen relationships with the deli or store manager. *Id.*, ¶ 5. Given that the needs of each store vary, the Merchandiser's responsibilities also vary widely throughout the nation. *Id.*, ¶ 5.

The number of stores that Merchandisers visit each day varies. *Id.*, ¶ 6. The number of visits depends upon the preferences of the Merchandiser and his or her manager, the needs of the Merchandiser's stores, and the Merchandiser's territory. *Id.*, ¶ 6. Merchandisers have wide latitude in creating their own schedules. *Id.*, ¶ 6. Merchandisers form relationships with store employees and managers and they get to know their assigned territory well. *Id.*, ¶ 6. As such, Merchandisers are in the best position to determine which stores to visit on which days. *Id.*, ¶ 6. Merchandisers also manage their own time and prioritize their tasks. *Id.*, ¶ 6. If unique circumstances arise requiring the Merchandiser's attention, the Merchandiser is free to remain at the store as necessary. *Id.*, ¶ 6. Conversely, if a store is running smoothly, the Merchandiser may shorten the store visit or skip it altogether. *Id.*, ¶ 6. The Merchandiser evaluates the circumstances and independently decides which tasks take precedence and how much time to devote to tasks. *Id.*, ¶ 6.

**C.   Contrary to Plaintiffs' Identical Self-Serving Declarations, Their Own Statements Confirm That They Performed a Wide Variety of Exempt Duties.**

In support of their Motion, Plaintiffs rely on five "cookie-cutter" declarations from themselves, and only half of the Opt-In Plaintiffs – Jennifer Lopez, Roberta Suchan, and Leslie Arff. Rather than provide specific details about why Plaintiffs and the collective are "similarly situated," these declarations contain nothing more than generic, conclusory statements. *See* Bailey Decl., Ex. C, Dkt. No. 20-4, pgs. 1-11. Based on these statements, Plaintiffs assert that Dietz uniformly misclassified all of its Merchandisers because the merchandising services they provided "commonly included restocking products, removing old or damaged products, scanning products for pricing errors, reorganizing shelves, and setting up and taking down store displays." *Id.*, ¶ 4. In contrast to their declarations, however, the Plaintiffs and Opt-In Plaintiffs' own

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 3

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

description of their work shows that they performed a complex mix of exempt duties, and had widely different experiences even within the same region.

Plaintiff Rozeboom worked for Dietz in Northwest Washington. Bailey Decl., Exh. C, Dkt. No. 20-4, pg. 2. Plaintiff Rozeboom serviced each assigned store every two weeks and serviced higher volume or high need stores every six to eight business days. Wright Decl., Exh. A, pg. 1. According to Ms. Rozeboom, she was responsible for the "[m]anagement of stores within region to insure correct placement and product lines within each store/and or accounts." Martell Decl., Exh. 1. To do this, Ms. Rozeboom "[w]orked with Regional Management to launch new item placement within stores." *Id.* She was "[r]esponsible for training Deli Managers and Associates in Albertsons/Safeway," made "[w]eekly store calls to insure schematics integrity as well as product integrity," and was responsible for "[m]anagement of warehouse and cross-dock orders within stores." *Id.*

Plaintiff LaValley worked for Dietz in the New England region in Massachusetts. Bailey Decl., Exh. C, Dkt. No. 20-4, pg. 4. In contrast to Plaintiff Rozeboom, Plaintiff LaValley only visited his stores at least once a month and high volume stores twice a month. Wright Decl., Exh. B, pg. 1. His visits were less frequent "[b]ecause of the demands of the Shaw's account and the dropback support he has provided for Safeway, BJ's, and Dave's Marketplace." *Id.* Mr. LaValley described his job duties as follows:

> From the day I started, I made it a priority to take care of my central Massachusetts stores. The lower volume stores were neglected, all needed case resets and just needed a change of perspective of how they viewed their sales and their DW merchandiser. I have filled many voids there, have built excellent relationships with managers and associates, not just in that area, but with nearly all my stores. I learned drop back this year, and had a blast going to other stores to train and teach people about the deli and our brand. . . I've also helped many times with store walkthroughs for our specific account. Not for just my stores I call on, but for many others that other team members have. Through doing that, assisting a manager with their department load, or just helping a specialist that needed assistance, I've built a solid reputation and good relationships within my account, including the rest of the team.

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 4

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

*Id.* pg. 2. Mr. LaValley received his dual role trainer certification and, in September 2016, was promoted to the Sapphire Team with "more work and responsibilities." Wright Decl., Exh. C, pgs. 3-4.

Opt-In Plaintiff Roberta Suchan worked for Dietz in the Chicago area in Illinois. *See* Bailey Decl., Ex. C, Dkt. No. 20-4, pg. 10. According to Ms. Suchan, she "gained an additional 10' of space in my del[i] case for my district"; "developed a numbering system for my district which has cut down the problem of having multiple pieces of the same product open; and is showing results in the percentage on their overall shrink"; and helped "the CK Mgr. and associates... understand the value of selling Dietz and Watson to their overall margin dollars for their deli's." Wright Decl., Exh. D, pg. 1. She also had "CK Mgr. asking for help with their shrink, dump and destroy, and training with their new and veteran's deli personal..." *Id.* As described in her LinkedIn Profile, Ms. Suchan's job responsibilities as a Merchandiser included: making sales calls at 21 retail stores; presenting new product introductions and making presentations to retail partners; coordinating demonstrations and training; conducting new store openings and/or remodels; developing relationships at the store, wholesale, and manufacturer level; supporting the team at trade shows and special events; and multitasking and working well under pressure to meet deadlines. Martell Decl., Exh. 2.

Opt-In Plaintiff Lopez worked in the San Francisco Bay Area in California. Bailey Decl., Exh. C, Dkt. No. 20-4, pg. 8. As Ms. Lopez detailed in her Performance Review, she "formed positive relationships within accounts from the deli to owners of independent markets that [she] work[ed] in" and she "call[ed] on [her] stores on a consistent basis and assist[ed] them with what [was] needed." Wright Decl., Exh. E, pg.1.  Ms. Lopez was repeatedly complimented for her sales efforts, including her demonstrations and knowledge of the products, promotional events to encourage store owners to carry Dietz products, and food shows where she was praised for "'upping' orders and taking leads." Wright Decl., Exhs. F-H.

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 5

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Plaintiffs did not provide declarations from three of the Opt-In Plaintiffs – Kaitlyn Antolic, Tina Nesbitt, and Kathleen Suchan. This omission is telling because their own words describe diverse job duties at Dietz.

Opt-In Plaintiff Antolic worked for Dietz in New Jersey and Pennsylvania, and later moved to California. Wright Decl., ¶ 8. In contrast to the other Plaintiffs, Ms. Antolic went to each of her stores one to two times a week. Wright Decl., Exh. I, pg. 1. Ms. Antolic reported that her duties included: "suggesting orders, giving the deli managers ideas to expand our brand, and increasing their sales," as well as "creating fact sheets for my stores to help them push our brand," and "gain[ing] the best section in the store for our brand to be displayed, gain[ing] extra footage on the retail floor, and making sure the stores maintained their ordering." *Id.* at pgs. 1-2. Ms. Antolic's manager noted that "[s]ome accounts are slower and cannot accommodate portions of our portfolio, but she continues to try to sell in as much of our portfolio as possible and that makes sense within each account." *Id.* at pg. 1. In her LinkedIn Profile, Ms. Antolic listed her job duties as: "managing major grocery accounts by weekly visits; traveling all over America to different grocery stores to train deli associates and managers on increasing sales and food safety and handling; provide ordering for store managers making sure product is stocked; and training new hires and brand ambassadors on the Dietz and Watson brand." Martell Decl., Exh. 3. Ms. Antolic left Dietz for a sales position with another company and, during her exit interview, "somewhat disagree[d]" that her "job duties and responsibilities [at Dietz] were clearly defined." Wright Decl., Exh. J.

Opt-In Plaintiff Tina Nesbitt worked for Dietz in Illinois. Wright Decl., ¶ 8. Ms. Nesbitt touted her sales activities and quality standards: "I'm always working on bringing in new items at my stores as well as trying others that are better sellers, fixing the mix to help grow sales in each store"; and "I always push quality standards in all of my accounts." Wright Decl., Exh. K, at pg. 1. Her manager praised her ability "to set standards as well as the expectation that they be met," while recognizing that there were differences between "current D & W standards vs.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

current District policy" that would require her to "develop conscensus" [*sic*].  *Id.* Her manager encouraged her to "become the hero of District 4" so she would "be able to get most of what [she] need[s] from Deli Ops in [her] district." *Id.* Thus, Ms. Nesbitt had to work within District-specific policies and practices.

Opt-In Plaintiff Kathleen Suchan also worked for Dietz in Illinois. In her LinkedIn profile, Ms. Suchan highlighted different duties than those reported by Roberta Suchan and Tina Nesbitt, who also worked in Illinois, including: "Introduce new products to customers, successfully market new inventory"; "Work with brokers and distributors to resolve inventory, pricing and lead times"; "Increased sales across all stores in multiple districts"; "Experience with analyzing sales figures"; and "Able to handle production problems in a timely and professional manner." Martell Decl., Exh. 4. Unlike other Merchandisers, Ms. Suchan reported that she would usually visit her stores for a full or half day, focusing on the quality rather than the quantity of her visits, and without regard to whether they were high-volume or low-volume stores. Wright Decl., Exh. L, pg. 1. Her manager also highlighted her leadership skills: "Strong relationship with Deli Ops to the point that she seems to manage most situations in which the two of them participate. The Chef's Kitchen Manager's and Deli Associates all seem to follow Kathy's program"; and "Sets standards for entire team with Selling Events." Wright Decl., Exh. M, pg. 1.

## III.   ARGUMENT AND AUTHORITY

### A.   Authorization of Notice Under the FLSA Is Discretionary and Should Only Be Granted in Appropriate Cases.

Generally, "litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). The FLSA provides a limited exception, under which the Court *may* allow named plaintiffs to sue for other individuals only if they first prove that they are "similarly situated." 29 U.S.C. § 216(b). However, the FLSA does not authorize the wholesale expansion that Plaintiffs seek here. *See Fetrow-Fix v. Harrah's Entm't, Inc.*, 2011 U.S. Dist. LEXIS 150116, at *19 (D. Nev. Dec. 30, 2011).

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 7
2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1      In *Hoffmann-La Roche, Inc. v. Sperling*, the Supreme Court explained that district courts

2   "have discretion, *in appropriate cases* to implement" the collective action mechanism "by

3   facilitating notice to potential plaintiffs" to permit "efficient resolution in one proceeding of

4   *common issues* of law and fact arising from the same alleged [. . .] activity."  493 U.S. 165, 169-

5   70 (1989) (emphasis added). Absent the requisite commonality, "it is doubtful that § 216(b)

6   would further the interests of judicial economy, and it would undoubtedly present a ready

7   opportunity for abuse." *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D.

8   Ala. 2003). Thus, courts and litigants alike have a "responsibility to avoid the 'stirring up' of

9   litigation through unwarranted solicitation." *Id.* at 1237. Where, as here, Plaintiffs seek

10   conditional certification and court-authorized notice merely as a means of "asking the court to

11   assist in [their] efforts to locate potential [p]laintiffs and thereby expand the scope of litigation,"

12   the request must be denied.  *Fetrow-Fix*, 2011 U.S. Dist. LEXIS 150116, at *10.

13      The Court's power to grant or deny conditional certification stems from Federal Rule of

14   Civil Procedure 83(b). *Hoffman La-Roche, Inc.*, 493 U.S. at 170-72 (discussing Rule 83 and how

15   it "endorses measures to regulate the actions of the parties to a multiparty suit"). Rule 83(b)

16   allows – but does not require – district courts to "regulate their practice in any manner not

17   inconsistent with" the Federal Rules of Civil Procedure. 12 Charles Alan Wright *et al.*, Federal

18   Practice and Procedure § 3155 (2014 & Supp. 2016). When proceeding under Rule 83(b),

19   therefore, the Court must engage in "difficult, case-by-case adjudication." *Id.* at n. 2 (quoting

20   Note, Rule 83 and the Local Federal Rules, 67 Col. L. Rev. 1251 (1967)). Rule 83(b)'s power is

21   not to be used promiscuously or formulaically, because the harms caused by an error would be

22   significant. *See id.* As applied to conditional certification, the Court should use its power under

23   Rule 83(b) *at its discretion. See Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 n.5

24   (3d Cir. 2011) (power to issue notice to collective is a matter committed to the Court's "broad

25   discretion"). Because the present motion invokes the Court's broad discretion, there is no

26   inflexible tenet dictating the outcome or methodology, and nothing requires the Court to grant

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 8

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

conditional certification liberally, or stingily, or anywhere between. *See The Steamship Styria v. Morgan*, 186 U.S. 1, 9 (1902) ("The term 'discretion' implies the absence of a hard-and-fast rule. The establishment of a clearly defined rule of action would be the end of discretion.").

**B.      Even Under a Lenient Standard, Plaintiffs Cannot Meet Their Burden.**

Plaintiffs ask the Court to apply a two-step approach in addressing their Motion. Dkt. No. 20, pgs. 7-9. In so doing, Plaintiffs suggest that the Court is bound to apply a "lenient" standard, which generally leads to conditional certification. *Id.* at pgs. 9-11. Though Plaintiffs are correct that some courts have applied a two-step approach in appropriate cases, Plaintiffs are incorrect that such an approach should automatically lead to conditional certification here.

To the contrary, Courts have recognized "conditional certification at the first stage is by no means automatic," and "lenient" does not mean the absence of any standard. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 44016 (S.D. Cal. Apr. 22, 2008). Even under the so-called "lenient" first-stage standard, Plaintiffs bear the burden of establishing, based on "substantial allegations supported by declarations or discovery," that they are "similarly situated" to other putative class members - i.e., that together they are "victims of a single decision, policy, or plan." *Benson v. West Coast Constr.*, 2007 WL 445456, at *2 (W.D. Wash. Feb. 6, 2007) (denying FLSA conditional certification where plaintiff's "self-serving declaration" failed to meet this burden). "A Plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, at *7 (E.D.N.Y. June 12, 2006).

Here, Plaintiffs have incorrectly interpreted the word "lenient" to mean they simply need to *ask* for conditional certification without presenting any *substantial* allegations or supporting evidence that a collective action is appropriate. Indeed, Plaintiffs only provide the hand-picked, self-serving declarations of two named plaintiffs and three of the six opt-in plaintiffs to support

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 9

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

their misplaced contention that notice should be sent to hundreds of Merchandisers nationwide. This is woefully deficient to meet Plaintiffs' burden. *See West v. Border Foods, Inc*., 2006 U.S. Dist. LEXIS 96963, at *19 (D. Minn. July 12, 2006) (denying conditional certification where declarations from six shift managers only represented approximately 2.5 percent of the potential collective); *Harrison v. McDonald's Corp*. 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (two affidavits for potential class of 300 insufficient).

Plaintiffs "must present more than mere allegations; *i.e.,* some evidence to support the allegations is required." *Young v. Cerner Corp.,* 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007). Plaintiffs have not provided this Court with any evidence that they are similarly situated to other Merchandisers with respect to an alleged illegal practice. Contrary to Plaintiffs' suggestion, conditional certification is not an automatic result that simply requires rubber stamping by the Court. Rather, closer scrutiny is required to avoid "waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012).  In a case such as this, where determining Plaintiffs' claims will require an individualized inquiry into the work duties and experiences of hundreds of Merchandisers, "conditional" certification will inexorably lead to an inefficient and wasteful result. *See, e.g., Proctor v. Allsups Convenience Stores, Inc.*, 2008 U.S. Dist. LEXIS 33707 (N.D. Tex. Apr. 24, 2008) (granting conditional certification without analysis of whether the class could be effectively and/or efficiently managed, and later decertifying the class after 1,072 opt-in plaintiffs joined the case and 34 depositions had occurred because the court could not "coherently manage the class"). These considerations support this Court's denial of conditional certification in this case.

      1.    **Plaintiffs' Identical Self-Serving Declarations Do Not Satisfy Their Burden.**

Regardless of the standard applied to Plaintiffs' Motion, Plaintiffs must provide "detailed

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 10
2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

allegations to support conditional certification of a company-wide collective action." *Gonzales v. Hair Club for Men, Ltd., Inc.*, 2007 U.S. Dist. LEXIS 26160, at *9-10 (M.D. Fla. Apr. 9, 2007). Such allegations "must be specific, not conclusory." *Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509-10 (S.D.N.Y. 2010); *see also Guillen,* 750 F. Supp. 2d at 477 (finding declarations insufficiently detailed where they contained conclusory terms such as "standardized operational practices" and "hierarchical management structure" without any explanation). Here, the evidence offered by Plaintiffs consists of five identical declarations signed by Plaintiffs Rozeboom and LaValley and three opt-in plaintiffs. These declarations are insufficient to satisfy Plaintiffs' burden because: (1) they contain only generalized allegations about some of the declarants' job duties without any specific or detailed information; and (2) the only information they provide about other Merchandisers are their conclusory and unsupported "observations" that other Merchandisers were paid a salary and did not receive overtime pay, without any evidence of other Merchandisers' job duties or hours worked. In short, the declarations lack any "actual evidence" showing that Plaintiffs and all other Merchandisers are similarly situated. *See Prizmic*, 2006 U.S. Dist. LEXIS 42627, at *7.

With respect to their job duties, Plaintiffs' declarations provide only vague generalities, and fail to include any detailed information about their actual day-to-day activities. *See,* Dkt. No. 20-4, Declarations at ¶ 4. Merely providing a general description and a partial list of job duties is not evidence of anything. Indeed, the only allegation each declarant makes with regard to their job duties is the following identical statement:

> As a Merchandiser, my primary job duty was to merchandise Defendant's products in retail locations. These merchandising services commonly included restocking products, removing old or damaged products, scanning products for pricing errors, taping coupons and stickers on products, reorganizing shelves, and setting up and taking down store displays.

*Id.* The statements that are contained in the declarations do not provide sufficient detail to be meaningful or admissible. When faced with similar vague and unsupported allegations, courts

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 11

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

have routinely denied motions for conditional certification. *See, e.g.*, *Colson,* 687 F. Supp. 2d at 928 (denying conditional certification where declaration was "based on nothing more than her opinions, which [were] vague and appear[ed] to [have been] based on unspecified hearsay from unidentified sources"); *Banks v. Robinson*, 2011 U.S. Dist. LEXIS 83939, at *17-18 (D. Nev. July 28, 2011) (denying motion for conditional certification where declaration "simply does not provide sufficient factual evidence").

Even though Plaintiffs' declarations are largely identical, it is what they do not say that is most illuminating. Indeed, Plaintiffs do not describe how much time they spend on the duties listed or allege that those duties were the most important. Also telling is the fact that Plaintiffs do not submit declarations from half of the Opt-in Plaintiffs, who worked in some of the same states as well as different states, and whose own description of their duties in performance documents and social media profiles paint a different picture. *See* section II.C, *supra*.

Moreover, Plaintiffs do not even attempt to allege that they are similarly situated to the proposed nationwide collective of Merchandisers. Plaintiffs' declarations contain even less information about other Merchandisers, stating only:

> Based on my personal observations and conversations with other Merchandisers, I believe that it was Defendant's standard practice not to pay overtime adjustments to any Merchandisers.  I know of other Merchandisers who were also paid a salary and who did not receive overtime pay.

Dkt. No. 20-4, Declarations at ¶ 9. Plaintiffs state only that other Merchandisers were paid a salary without overtime, but provide zero evidence that other Merchandisers performed non-exempt duties or worked more than 40 hours in any week. The conclusory statements in Plaintiffs' declarations provide no actual evidence from which the Court can assess whether Merchandisers in other locations are similarly situated to Plaintiffs or have been affected by a "single decision, plan, or policy." Courts have denied conditional certification when faced with similarly deficient declarations. *See Trinh,* 2008 U.S. Dist. LEXIS 33016, at *10 (affiants' "speculative beliefs" about other workers are insufficient); *Monger v. Cactus Salon & Spa, LLC,*

DEF'S OPP. TO CONDITIONAL CERTIFICATION - 12

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

2009 U.S. Dist. LEXIS 60066, at *5-6 (E.D.N.Y. July 6, 2009) (denying conditional certification as to all but one location because plaintiff's belief that allegedly similarly situated employees were subject to the same policies was insufficient).

To determine whether, in fact, such individuals are "similarly situated," Plaintiffs must present evidence that exempt status can be determined through a single collective action. Plaintiffs have failed to do so. Because the statements in Plaintiffs' declarations are conclusory and unsupported, they do not rise to the level of "*actual* evidence of a factual nexus between [their] situation and those that [they] claim[] are similarly situated." *Prizmic*, 2006 U.S. Dist. LEXIS 42627, at *7 (emphasis added).

> **2.    Dietz's Job Description Does Nothing to Support Plaintiffs' Arguments, But Does Support that Plaintiffs Are Not Similarly Situated.**

Other than the six cookie-cutter declarations, the only other evidence submitted by Plaintiffs is the Merchandiser job description, which does nothing to support Plaintiffs' misplaced proposition that they were misclassified as "exempt" or that they are "similarly situated" to a nationwide collective. Instead, the job description expressly states that the performance of the Merchandiser position:

> . . .include[s] the exercise of discretion and independent judgment. Each customer's needs vary and it is the merchandiser's responsibility to assess these unique needs and design programs and products in different combinations to meet those specific needs. A merchandiser compares and evaluates discrete options and makes a decision after he/she has considered each option or possibility.

*See* Dkt. No. 20-5, pg. 3.

Because the job description does not establish that Merchandisers "perform non-exempt tasks for a majority of their working hours," and because it recognizes that duties will vary depending on each customer's unique needs, the Court must examine each Merchandiser's individual job duties to determine whether they are similarly situated. *See Bramble v. Wal-Mart*

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

*Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, at *19 (E.D. Pa., Apr. 12, 2011). Accordingly, the Court should deny Plaintiffs' request for conditional certification because they have failed to carry their burden of showing that they are similarly situated to other Merchandisers.

### C. Certification Should Be Denied Because Plaintiffs Have Not Shown That A Nationwide Collective of Merchandisers Are Similarly Situated.

To grant Plaintiffs' Motion, this Court must be satisfied that the case is "manageable as a collective action." *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1284-85 (S.D. Florida 2012) (denying motion for conditional certification under the FLSA where "several individualized issues... render[ed] the group unmanageable as a collective class"). Accordingly, Plaintiffs must be able to "generate common answers" to the question of whether they and other Merchandisers were properly classified as exempt "in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion and supervisors..." *Ruiz v. Serco, Inc.*, 2011 U.S. Dist. LEXIS 91215, at *19 (W.D. Wis. Aug. 5, 2011) (declining to conditionally certify a proposed collective action in a misclassification case).[1] Conditional certification is not appropriate if individualized inquiries would pervade and, therefore, preclude this Court from answering the questions presented by Plaintiffs through common proof. *See Macgregor v. Farmers Insurance Exchange*, 2011 U.S. Dist. LEXIS 80361, at *13-15 (D.S.C. July 22, 2011) (denying motion for conditional certification under FLSA).

Such is the case here. Plaintiffs' sole allegation is that a collective should be conditionally certified because Dietz misclassified its Merchandisers as exempt. *See* Dkt. No. 20. Courts have rejected the argument that the misclassification of workers alone justifies certification of a collective action. *See Colson,* 687 F. Supp. 2d at 925; *see also Silverman v.*

---

[1] In the Rule 23 context, the U.S. Supreme Court has explained that commonality requires the identification of common questions that will generate common answers "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. Courts have recognized that the same requirements should apply to FLSA collective actions. *See, e.g., Blaney v. Charlotte-Mecklenburg Hospital Authority*, 2011 U.S. Dist. LEXIS 105302, at *26 (W.D.N.C. Sep. 6, 2011); *Ruiz*, 2011 U.S. Dist. LEXIS 91215, at *18-19; *MacGregor*, 2011 U.S. Dist. LEXIS 80361, at *13.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

*SmithKline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, at * 8 (C.D. Cal. Oct. 15, 2007) (denying FLSA certification despite allegations that the employees had the same primary job duties and were improperly classified by defendants as exempt). Instead, individualized inquiry is necessary with regard to each Merchandiser and the various accounts to which they were assigned to determine on a case-by-case basis whether they were properly classified. As a result, the proposed collective in this case should not be certified.

### 1. The Need to Inquire Into Merchandisers' Actual Day-to-Day Duties Renders Collective Action Treatment Inappropriate.

Even if a lenient standard is applied here, the critical issues of commonality and efficiency, *see Hoffmann-La Roche, Inc.*, 493 U.S. 165, necessarily will require this Court to examine the actual job duties of individual Merchandisers to determine whether they are "similarly situated." *See Bramble*, 2011 U.S. Dist. LEXIS 39457, at *19. Such an individualized analysis is particularly critical in FLSA misclassification cases, both at the certification and merits stages. *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004).

Courts refuse to permit FLSA suits to proceed as a collective action if individualized inquiries will eliminate "the economy of scale envisioned by the FLSA collective action procedure." *Id.* at 1275. Thus, where, as here, the record indicates that Merchandisers work on different accounts in different store locations in different states under different management teams and different requirements, "a collective action certified on the facts presented thus far would be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying conditional certification where "factual differences" existed including different job sites); *see also Douglas v. Xerox Business Services LLC*, 2014 U.S. Dist. LEXIS 94594, at *11 (W.D. Wash. July 10, 2014) (denying conditional certification of a proposed class that spanned different clients and supervisors); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying conditional certification where

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1 | factual inquiries involved different managers at different locations nationwide).

2 | Determination of Plaintiffs' FLSA claims will require, among other things, a detailed

3 | evaluation of whether each Merchandiser was employed in a *bona fide* outside sales and/or

4 | administrative capacity – in other words, whether each Merchandiser was customarily and

5 | regularly engaged away from the employer's place of business in making sales or obtaining

6 | orders and was not performing other work more than 20% of the time; or alternatively (or in

7 | combination), whether each Merchandiser performed non-manual work related to the

8 | management of Dietz's business or the business of its customers, and exercised discretion and

9 | independent judgment. *See* 29 C.F.R. § 541.500; 29 C.F.R. § 541.200; 29 C.F.R. § 541.708.

10 | "Determining whether an employee is exempt is extremely individual and fact-intensive,

11 | requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful

12 | factual analysis of the full range of the employee's job duties and responsibilities.'" *Diaz v.*

13 | *Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382, at *8 (W.D.N.Y. Oct. 17,

14 | 2005), quoting *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

15 | Against this legal backdrop, Plaintiffs must show that Dietz's alleged misclassification of

16 | all Merchandisers presents common questions that may be answered through common proof. The

17 | evidence before this Court demonstrates otherwise. Notwithstanding the conclusory assertions in

18 | Plaintiffs' motion and declarations, the evidence submitted by Defendant confirms the

19 | tremendous diversity of duties and experiences across Merchandisers who work in different

20 | regions, on different accounts, in different store locations, under different managers, including:

21 | ● Making outside sales calls;
22 | ● Determining the Dietz products needed for each specific store location;
   | ● Placing orders for Dietz's products;
23 | ● Recommending new products to be sold at store locations;
   | ● Encouraging clients to broaden their inventory of authorized products;
24 | ● Persuading deli managers to place larger orders;
   | ● Performing demonstrations to promote Defendant's products;
25 | ● Setting and maintaining quality standards;
26 | ● Planning promotional events;

---

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 16

2:17-CV-01266-RAJ

- Developing relationships with store managers and employees;
- Training store associates about Dietz's products;
- Making recommendations and decisions about sales strategies; and
- Deciding how to manage and prioritize their time.

*See* section II.C, *supra*. The statements contained in the Plaintiffs' and Opt-In Plaintiffs' performance-related documents and social media profiles (which are in their own words – not the words of Plaintiffs' counsel) demonstrate that the duties and experiences of individual Merchandisers vary based on their particular skills and the unique needs and requirements of their accounts. This distinguishes the present case from the primary case cited by Plaintiffs, *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011), where manager testimony supported that "all merchandisers have the same or similar job duties." *Id.* at 650.

The myriad of individualized inquiries necessary to determine whether each Dietz Merchandiser was, in fact, performing exempt tasks render collective action treatment inappropriate in this case. Instead, disparate job duties are fatal to the conditional certification determination when the differences require individualized analysis to determine exempt status. *See Hinojos v. The Home Depot, Inc.,* 2006 U.S. Dist. LEXIS 95434, at *8-9 (D. Nev. Dec. 1, 2006) ("resolution of plaintiffs' claims depends on the specific employment conditions in each store and department in which each class member worked," thereby "making collective action treatment impractical and unmanageable"). Courts routinely decline to certify collective actions, even under a first-stage analysis, due to the primacy of the individualized issues necessary to determine exempt status. *See, e.g., Ahmed v. T.J. Maxx Corp.*, 2014 U.S. Dist. LEXIS 138240, at *18 (E.D.N.Y. Sept. 24, 2014) (denying conditional certification where "the testimony of the potential opt-ins...demonstrates variances in the responsibilities of ASMs from store to store undermining [the plaintiff's] assertion that ASM duties were defined by a nationwide plan or policy"); *Luksza v. TJX Companies, Inc.*, 2012 U.S. Dist. LEXIS 111864, at *28 (D. Nev. Aug. 8, 2012) (denying conditional certification in a misclassification case by examining individual

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 17

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

job duties); *Fetrow-Fix*, 2011 U.S. Dist. LEXIS 150116, at *20-23 (same).[2] For all these reasons, the Court should deny Plaintiffs' motion.

### 2. Plaintiffs Have Failed to Identify Any "Single Decision, Policy or Plan" that Will Be Dispositive of Their Claims in this Action.

Moreover, even at the first stage, this Court must consider whether, as the Supreme Court observed in *Hoffmann-La Roche*, the notice Plaintiffs seek will result in the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged...activity." 493 U.S. at 170. Numerous courts have denied conditional certification, even under the "lenient" standard, due to a lack of the requisite commonality and manageability. *See, e.g., Douglas,* 2014 U.S. Dist. LEXIS 94594, at *11 (denying conditional certification of one proposed class due to "lack of a company-wide policy"); *Ruiz*, 2011 U.S. Dist. LEXIS 91215, at *3 (denying conditional certification where "Plaintiffs' evidence does not support a finding that plaintiffs are similarly situated to the potential class members with respect to job duties and levels of discretion or with respect to the policy defendant used to determine whether they should be classified as exempt"); *Blaney*, 2011 U.S. Dist. LEXIS 105302, at *26 (finding that decentralized

---

[2] *See also Prince v. Cato Corp.*, 2015 U.S. Dist. LEXIS 28917, at *22-24 (N.D. Ala. Mar. 10, 2015) (denying conditional certification because of unreliable declarations from a limited group and the need to analyze individualized job duties in a misclassification case); *Butz v. Amware Distrib. Warehouses of Ga., Inc.*, 2014 U.S. Dist. LEXIS 52422, at *22 (N.D. Ga. Apr. 16, 2014) (denying conditional certification in misclassification case because "[i]t is not enough...to show that several of the facilities have the same description and the same senior managers to infer similarity of operations or policies, especially when each location has a different on-site general manager"); *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, 2012 U.S. Dist. LEXIS 190310, at *13-16 (S.D. Fla. Apr. 10, 2012) (denying conditional certification in misclassification case because of differences in individual circumstances); *Aguirre v. SBC Commc'ns, Inc.*, 2007 U.S. Dist. LEXIS 17259, at *43 (S.D. Tex. Mar. 12, 2007) ("[g]iven the fact-intensive nature of the exemption analysis, the plaintiffs have not shown that they are similarly situated so as to make collective treatment of their claims proper under section 216(b) of the FLSA"); *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional certification because plaintiff and potential collective action members were not similarly situated, as application of FLSA exemption would depend on each employee's specific duties); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying conditional certification because plaintiff failed to make adequate showing that "questions common to a potential group of plaintiffs would predominate a determination of the merits in the case," because merits of plaintiffs' claim would require factual analysis of their individual day-to-day work functions). *See also Hernandez v. United Auto Credit Corp.*, 2010 U.S. Dist. LEXIS 40209 (N.D. Cal. Apr. 2, 2010) (decertifying FLSA collective action because, despite an internal policy classifying all class members as exempt, the actual duties performed by the class members varied significantly).

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 18
2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

management processes and decisions of individual supervisors prevented conditional certification).

Putting aside the issue of individualized inquiries, Plaintiffs' Motion must also be denied because they have failed to identify any "single decision, policy, or plan" that will be dispositive of their claims. *Benson*, 2007 WL 445456, at *2. The only "decision, policy, or plan" that Plaintiffs point to is Dietz's alleged "uniform misclassification" of Merchandisers. *See* Dkt. No. 20, pg. 6. As a matter of law, however, this is insufficient to serve as the "factual nexus which binds the named plaintiffs and the potential class members together." *See Hinojos,* 2006 U.S. Dist. LEXIS 95434, at *5. The reason for this is simple: determination of Plaintiffs' claims will focus on the actions of individual Merchandisers, not Dietz.

As the Ninth Circuit explained when faced with a similar argument in the Rule 23 context, the "fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are *actually* performing similar duties." *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 959 (9th Cir. 2009) (district court erred by giving exemption classification too much weight and not making appropriate inquiry into individualized duties). This holding has been applied to the "lenient" FLSA standard of conditional certification as well. *See, e.g., Colson*, 687 F. Supp. 2d at 927 ("[T]he mere classification of a group of employees - even a large or nationwide group - as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes"); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1131 (N.D. Cal. 2011) ("Although *Wells Fargo* dealt with a Rule 23 class action, other courts in this district have extended its reasoning to FLSA cases").

Consistent with these authorities, Plaintiffs' Motion must be denied because Dietz's classification of Merchandisers as exempt does not provide a sufficient basis for binding the individual claims of hundreds of different Merchandisers across the country. Plaintiffs have

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 19

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   presented no evidence that a single classification decision will be dispositive of the claims of all

2   Merchandisers. Instead, Plaintiffs merely rely on their self-serving conclusory statement that "it

3   was Defendant's standard practice not to pay overtime adjustments to any Merchandisers." Dkt.

4   No. 20-4, pgs. 1-11, ¶ 9. Plaintiffs have not offered any evidence that other Merchandisers were

5   improperly classified as exempt by virtue of the duties they performed.

6        Even if Plaintiffs had offered sufficient or admissible evidence of a uniform classification

7   decision, nothing about a decision to designate Merchandisers as exempt is either *per se*

8   unlawful or unlawful as applied. *See Richardson v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist.

9   LEXIS 12911, at *19 (S.D. Tex. Feb. 2, 2012) (denying certification where plaintiffs relied on

10  job postings and descriptions to show nationwide policy, but those postings merely described

11  certain job duties and did not evidence any policy of violating the law); *Guillen*, 841 F. Supp. 2d

12  at 802 n.2 ("[t]hat Guillen must show that potential plaintiffs are similarly situated with respect

13  to their allegations of illegal conduct – that is, not merely with respect to their being subject to a

14  common job description – is well settled").

15       According to Plaintiffs' view, *any* nationwide employer with an exempt position that

16  involves a job description should be subject to conditional certification, with notice of the

17  lawsuit sent to hundreds or thousands of employees simply because an employee decides to bring

18  a lawsuit. Under that exceedingly low bar, every exempt position would be certifiable as a

19  collective action. That, however, is not the law. *See Bedoya*, 2012 U.S. Dist. LEXIS 190310, at

20  *11 (denying conditional certification despite allegations of a uniform misclassification policy).

21       In the end, Plaintiffs have failed to provide any evidence of a "single decision, policy, or

22  plan" that can serve as the basis for conditional certification. As a legal matter, the mere

23  classification of a group of employees as exempt is inadequate because of the need to examine

24  their job duties on a case-by-case basis. Factually, there is no evidence of a "uniform

25  misclassification" policy. The generic job description and conclusory declarations submitted by

26  Plaintiffs likewise do not establish a "single decision, policy, or plan" that violates the law

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

because they provide insufficient information about the exempt or non-exempt nature of the putative class members' job duties, especially when viewed in comparison to the varied exempt duties they acknowledge performing in their performance reviews and social media profiles.

### D.    The Court Should Reject Plaintiffs' Proposed Notice.

The purpose of notice in a collective action is to notify individuals of the litigation once the putative class has been identified and is represented by an adequate class representative with a viable claim. *Simmons v. Valspar Corp.*, 2011 U.S. Dist. LEXIS 39340, at \*18 (D. Minn. Apr. 11, 2011) (holding the "power to authorize notice is discretionary and should be exercised only in 'appropriate cases'—that is, in cases where the plaintiffs have made a threshold showing that they meet the criteria in § 216(b)"). "Consistent with this principle, courts have the responsibility to avoid 'stirring up' litigation through unwarranted solicitation." *Colson*, 687 F. Supp. 2d at 929-30. *See also Novick v. Shipcom Wireless, Inc.*, 2017 U.S. Dist. LEXIS 55699, at \*15-18 (S.D. Tex. Apr. 12, 2017) (denying conditional certification and stating the court must ensure the collective process is "being used appropriately to promote judicial efficiency, rather than used as a tool to burden a defendant and create settlement pressure").

Should the Court nevertheless grant Plaintiffs' Motion and certify a collective action, the Court has broad discretion to formulate the opt-in notice in order to ensure that the litigation is conducted in an "orderly and sensible" manner and to ensure that putative class members do not receive "misleading communications." *Hoffman-LaRoche*, 493 U.S. at 170 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner."). To the extent that the Court grants Plaintiffs' Motion, Dietz objects to Plaintiffs' proposed notice and consent form as discussed in detail below.

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 21

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1. **Plaintiffs' Request to Send Notice to Others "Performing Similar Duties" Should Be Denied.**

Plaintiffs request that the Court authorize notice not only to Merchandisers nationwide but also to those in "other job titles performing similar duties." Dkt. No. 20, pg. 2. Plaintiffs have not made any allegations or submitted any evidence about individuals in other job titles performing similar duties, and thus have not met their burden to establish that notice is appropriately sent to such a group. Moreover, Plaintiffs have failed to define what they mean by "similar duties," making it impossible for Dietz to comply with this nebulous request. To the extent the Court grants Plaintiffs' Motion, it should be limited to individuals who were Merchandisers like Plaintiffs.

2. **Plaintiffs' Proposed Notice Should Be Revised.**

It is well-settled that FLSA notices must be fair, balanced, and accurate so that collective action members can make informed decisions about whether to participate. *See Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 U.S. Dist. LEXIS 25210 (N.D. Cal. Mar. 18, 2009). While Plaintiffs' proposed notice ("the Notice"), *see* Dkt. No. 20-2, provides information about the recipient's rights and the potential for obtaining monetary recovery, it does not inform them about their corresponding responsibilities. Section 4 of the Notice should inform the recipients that they may be required to provide information or documents, participate in depositions, or testify at trial, and may share in liability for costs. *See id.* at *24-25. Section 3 of the Notice should also clarify that Merchandisers are eligible to join if they "worked more than forty (40) hours in a week for Dietz without receiving overtime pay."  With respect to Section 6 of the Notice, the last sentence should be deleted because it is not necessary to inform individuals of their rights and, instead, encourages them to make a particular decision.

3. **Plaintiffs' Request for Email Notice Should Be Denied.**

Notice by first-class mail has always been the gold standard for sending notice to putative class and collective action members. *See* MANUAL FOR COMPLEX LITIGATION § 21.311

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 22

2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

(4th ed. 2007). Plaintiffs, however, seek to send their Notice and Opt-In Form not only by first class mail but by email. Dkt. No. 20, pgs. 13-14. Here, Plaintiffs' email request should be denied. Email possesses the heightened risk that the notice will be reproduced or posted to internet sites, which will compromise the integrity of the notice process. *See Shaia v. Harvest Mgmt. Sub LLC,* 306 FRD 268, 276 (N.D. Cal. 2015) (finding "names and mailing addresses will provide the best means of contact. There is no requirement that [defendant] provide e-mail addresses."); *McKeen-Chaplin v. Provident Sav. Bank,* 2013 U.S. Dist. LEXIS 113654, *24 (E.D. Cal. 2013) (finding that additional notice by email was not necessary); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630-31 (D. Colo. 2002) ("Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process"). If this Court is inclined to conditionally certify a class, to which Dietz objects, notice should only be provided by first class mail.

### 4. The Privacy Rights of the Collective Should Not Be Violated By Divulging Telephone Numbers and Social Security Numbers.

The Court should not require Dietz to provide telephone numbers or social security numbers, as these are not necessary for sending notice. *See Taylor v. AutoZone, Inc.* 2011 U.S. Dist. LEXIS 55590, *16 (D. Ariz. 2011) ("[t]he production of addresses is appropriate, but in the interest of protecting class members' privacy, we will not order defendant to provide telephone numbers and social security numbers..."). Numerous courts have denied access to telephone numbers at the notice stage, citing the risk of "improper solicitation" and the "needless intrusion into the privacy of these individuals and their families." *See, e.g., Stickle v. SCI Western Market Support Center, L.P.*, 2009 U.S. Dist. LEXIS 97735 (D. Ariz. Sept. 30, 2009); *Parks v. Eastwood Ins. Services, Inc.*, 2002 U.S. Dist. LEXIS 23762 (C.D. Cal. July 29, 2002); *Arevalo v. D.J.'s Underground, Inc.*, 2010 U.S. Dist. LEXIS 64516 (D. Md. Oct. 13, 2010); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2011 U.S. Dist. LEXIS 11275 (W.D. Pa. June 1, 2009). Merchandisers also have a privacy interest in their social security numbers, which the Court

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 23
2:17-CV-01266-RAJ

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

should not force Dietz to divulge. *See Bredbenner v. Liberty Travel, Inc.,* 2009 U.S. Dist. LEXIS 67122, 2009 WL 2391279, at *2 n. 3 (D.N.J. July 31, 2009); *Ritzer v. UBS Fin. Servs. Inc.,* 2008 U.S. Dist. LEXIS 71635 (D.N.J. Sept. 22, 2008). Therefore, the Court should not order Dietz to turn over this sensitive data to Plaintiffs' counsel.

### 5.    Plaintiffs' Proposed Reminder Notice Should Not Be Permitted

Plaintiffs request for a "reminder" 15 days into the proposed notice period is unnecessary and should not be allowed. "In facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffman-La Roche Inc.,* 493 U.S. at 168-69. Courts should be hesitant to authorize duplicative notice because it may unnecessarily "stir up litigation" or improperly suggest the Court's endorsement of plaintiff's claims. *Id.* Numerous courts have denied similar requests for "reminder" notices. *See, e.g., Schroeder v. Humana Inc.*, 2012 U.S. Dist. LEXIS 168759 (E.D. Wis. Nov. 27, 2012); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365 (N.D. W. Va. Oct. 12, 2012); *Knipsel v. Chrysler Group L.L.C.*, 2012 U.S. Dist. LEXIS 21188 (E.D. Mich. Feb. 21, 2012); *Robinson v. Ryla Teleservices, Inc.*, 2011 U.S. Dist. LEXIS 147027 (S.D. Ala. Dec. 21, 2011); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746 (N.D. Ill. 2010).

### 6.    Dietz Should Be Given a Reasonable Amount of Time to Provide a Putative Class List.

Dietz objects to Plaintiffs' request that it provide information about the potential collective action members within seven days, and instead requests that it be given fourteen days.

## IV.    CONCLUSION

For the foregoing reasons, Dietz respectfully requests that the Court deny Plaintiffs' motion for conditional certification and court-authorized notice.

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    November 27, 2017

2

3                                    s/ Breanne Sheetz Martell
                                     Joanna M. Silverstein, WSBA #38577
4                                    jsilverstein@littler.com
                                     Breanne Sheetz Martell, WSBA #39632
5                                    bsmartell@littler.com
                                     **LITTLER MENDELSON, P.C.**
6                                    One Union Square
                                     600 University Street, Suite 3200
7                                    Seattle, WA  98101.3122
                                     Phone:        206.623.3300
8                                    Fax:          206.447.6965

9                                    Attorneys for Defendant
                                     DIETZ & WATSON, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DEF'S OPP. TO CONDITIONAL CERTIFICATION** - 25

2:17-CV-01266-RAJ                                      LITTLER MENDELSON, P.C.
                                                            One Union Square
                                                       600 University Street, Suite 3200
                                                         Seattle, WA  98101.3122
                                                             206.623.3300

1

## CERTIFICATE OF SERVICE

2      I am a resident of the State of Washington, over the age of eighteen years, and not a party

3  to the within action.  My business address is One Union Square, 600 University Street, Ste. 3200,

4  Seattle, WA  98101.  On November 27, 2017, I electronically filed the foregoing document(s)

5  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

6  to the following:

7

| ATTORNEYS FOR PLAINTIFFS | |
| --- | --- |
| Toby J. Marshall, WSBA #32726<br>tmarshall@terrellmarshall.com<br>**TERRELL MARSHALL LAW GROUP PLLC**<br>**936 North 34th Street, Suite 300**<br>**Seattle, Washington 98103-8869**<br>**Telephone:**     **(206) 816-6603**<br>**Facsimile:**     **(206) 319-5450** | Jason D. Friedman<br>*Pro Hac Vice*<br>friedman@nka.com<br>Rebekah L. Bailey<br>*Pro Hac Vice*<br>bailey@nka.com<br>**NICHOLS KASTER, PLLP**<br>**4600 IDS Center**<br>**80 South 8th Street**<br>**Minneapolis, MN 55402**<br>**Telephone:**     **(612) 256-3200**<br>**Facsimile:**     **(612) 215-6870** |

15      Executed on November 27, 2017, at Seattle, Washington.

16

          *s/ Sally Swearinger*

17               Sally Swearinger
               sswearinger@littler.com

18               **LITTLER MENDELSON, P.C.**

19

20  Firmwide:151321897.3 095532.1001

21

22

23

24

25

26

**DEF'S OPP. TO CONDITIONAL CERTIFICATION - 26**

2:17-CV-01266-RAJ